**Slagle v. Slagle**

*James M. Goodwin,* for plaintiff.
*James W. Manolis,* for defendant.

HODGE, *J.,* February 9, 2006—The parties were before the court on several petitions relative to the request of Mother to move from her current residence at 2320 Avalon Drive, Hermitage, Mercer County, Pennsylvania, to a new residence at 118 Skyline Drive, Canfield, Mahoning County, Ohio, with the parties' minor child, [    ], born August 1, 1993.

Presently pending before the court are the following petitions:

(1) Petition to modify court order, filed by the plaintiff on December 19, 2005, with a rule returnable for January 30, 2006;

(2) Petition for special relief, filed by the defendant on January 13, 2006, to prevent the plaintiff from moving from the Hermitage, Pennsylvania address to Canfield, Ohio, and seeking to prohibit plaintiff to enroll the child in the Canfield, Ohio, school system, without prior order of court or consent of the defendant;

(3) Petition for modification and custody order filed by the defendant on January 13, 2006;

(4) Petition for civil contempt filed by the defendant on January 17, 2006, whereby a rule was issued upon

the plaintiff to show cause why she should not be held in contempt; and

(5) Petition for special relief, filed by the plaintiff, on January 23, 2006, seeking to vacate the order of the Honorable Michael J. Wherry, dated January 13, 2006, which order was inadvertently signed by your undersigned counsel.

This court, by order dated January 24, 2006, vacated the court's order of January 23, 2006, and directed the parties to maintain the status quo that existed following the entry of the order of Judge Wherry, dated January 13, 2006.

At the hearing held by the court on January 30, 2006, the factual background developed was that the parties were married on May 4, 1985, that the minor child, [ ], was born on August 1, 1993, and that a divorce complaint was filed on October 31, 2001.

During the pendancy of the litigation, there have been several custody orders entered, with the most recent being August 28, 2003, which provided for shared legal custody of the minor child between the parties, primary physical custody of the minor child to be with the plaintiff/Mother, and with the defendant/Father to have alternate weekends/weekdays and split holidays, depending upon his work schedule.

The record reflects that the parties were divorced by order and divorce decree filed on August 13, 2004.

The essence of this current litigation is the desire of Mother to move with her new husband from the current

address and the former marital residence of 2320 Avalon Drive, Hermitage, Mercer County, to 118 Skyline Drive, Canfield, Mahoning County, Ohio.

At the hearing, Mother testified that she desired to move with her new husband, Kevin Thomas Crawford, from the Hermitage, Pennsylvania residence to 118 Skyline Drive, Canfield, Ohio. Mother testified that the new home is larger, updated, better insulated, and contains more room for [   ]. In the current home, a three-bedroom home, [   ] has a small bedroom, approximately nine feet by nine feet, whereas the newer home would have a much bigger bedroom for her. In addition, the new neighborhood would be similar to their current neighborhood, and would have lots of children. Other benefits of the move, according to the Mother, would be that if [   ] would get sick, her new in-laws would be much closer and able to watch her, that Canfield, Ohio, is much closer to her new in-laws' residence, that Canfield has a municipal park two blocks away, where various recreational activities are available, that her husband's employment is much closer, being 20 minutes away as opposed to 35 minutes away, and that Father would not have to change his visitation times, as the Canfield school system is out for the day at 2:10 p.m., whereas now the Hermitage school system discharges students at 2:45 p.m. Mother also testified that while the current court order provides that Father's visitation with [   ] is to start at 4 p.m., that she permits an earlier pick-up by Father when his work schedule permits and that she has agreed to change his days of the visitation with [   ] due to her basketball schedule.

Mother testified that there have been problems with school pick-ups by Father, which make adjustments difficult in the Hermitage school system, when, for example, Father's work schedule requires him to change the visitation days with short notice.

In the Canfield school system, Mother's father-in-law would be there to get the child off the school bus.

Mother testified that she believes that Father's reasons for opposing the move were that it would cut down on his week-day visitation with [    ]. In an attempt to alleviate Father's fears, Mother said she gave a map to the new house to her attorney, to forward to Father.

Mother testified that the distance difference between Father's residence in New Castle, Pennsylvania and the current residence in Hermitage, Pennsylvania, and New Castle, Pennsylvania and Canfield, Ohio is only an extra 3.3 miles further, and an extra 10 minutes. In addition, Mother testified that from Father's place of work in Shippingport, Pennsylvania, it is 10 miles less to the new residence.

Mother further testified that she made inquiries relative to the quality of the Canfield schools, and she is satisfied that the caliber of the school district is satisfactory in comparison with the Hermitage, Pennsylvania school system.

On cross-examination, Mother acknowledged that she has communication problems in general with her ex-husband, and as a result, attempts to communicate with him in writing.

Mother acknowledged that she had not spoken with her former husband prior to signing the sales agreement on the Canfield, Ohio property, and didn't think it was a big problem since the distance differential was somewhat small. Mother further testified that she did not realize the relocation would require a court order or consent of Father, even though she had a copy of the court's prior order.

Mother testified that she and her current husband signed an agreement of sale to purchase the Canfield, Ohio property on either November 27 or 28 of 2005, whichever day was Sunday, which was subsequently accepted by the seller of the property on either Tuesday or Wednesday of the following week.

Mother testified that [    ] is 12 years old, has attended the Hermitage school system since first grade, and is currently in the sixth grade.

[    ] has performed well academically in the Hermitage school system, has friends there, plays basketball, and is editor of the school newspaper.

Mother further testified that she and [    ] have resided in the current home since the first grade, that she and her current husband looked for homes in the Hermitage, Pennsylvania area, but were not able to find any home that they could afford, whereas they were able to afford the purchase of the Canfield, Ohio home.

Mother further testified that her extended family resides in Shenango Township, Lawrence County, Pennsylvania, and that Father's family lives in Pulaski, Pennsylvania.

Mother currently attends the Pennsylvania State University-Shenango Valley Campus in Hermitage, Pennsylvania, expecting to graduate in May of this year, and is working part-time on her internship at the Greer House in New Castle, Pennsylvania and the Barkley House in New Castle, Pennsylvania.

Mother further testified that her current husband works in the Boardman, Ohio vicinity, and that his hours are 6 a.m. until 3 p.m., Monday through Friday. The Mercer County residence is approximately 35 minutes from her husband's place of work, with the Canfield, Ohio residence approximately 20 minutes from his place of work.

When questioned by counsel for Father as to a statement that the plaintiff had made at the time of the divorce about not wanting to uproot [     ], Mother replied that she is now employed and married, the difference being before, she did not want to move in the middle of the divorce.

Mother further testified that Father works various shifts at the First Energy Power Plant in Shippingport, Pennsylvania, and that the current visitation schedule is designed to accommodate his work schedule.

Father testified that he exercises his visitation privileges with the child on a consistent basis, based upon his work schedule.

Father is now remarried to Denise, and has a 10-month old daughter, and [     ] has a good relationship with both her stepmother and half-sister.

Father testified that he had made an experiment relative to the driving time from his home in New Castle, Pennsylvania, to Canfield, Ohio, the driving time being 54 minutes at 5 p.m. on that particular day, traveling by what he knew to be the most direct route and at the appropriate speed limit. The travel time from New Castle, Pennsylvania to the Hermitage residence is 27 minutes.

Father's concern is that the change in the residence would do away with the nightly visits during the weekdays during school times, and that he couldn't see the child on every other weekend because of his work schedule.

Father acknowledged that the move would not have impact on the summer visitation schedule, as he would have more time to spend with the child and the driving time would not be so crucial.

Father's position was that the move was a big deal for the following reasons:

(1) It was six miles longer;

(2) It took twice as long to get there than from New Castle to Hermitage;

(3) Due to the driving time, during school hours, it would be a problem with the week-day visitations; and

(4) That, in his opinion, it would be no improvement in the quality of life for [    ].

Father further testified that he believed there were no alternative make-up times available during the school year.

Upon cross-examination, Father did acknowledge that his work schedule creates problems, but the parties have worked around his work schedule. Father acknowledged that Mother allowed earlier pick-up times and alternate days when the child's schedule interfered with his work. In addition, Father acknowledged that for summer vacations, he gets first choice each year, and that Mother has not tried to keep the child from him.

The Superior Court of Pennsylvania has established guidelines for the trial court to consider when deciding relocation issues in the case of *Gruber v. Gruber,* 400 Pa. Super. 174, 583 A.2d 434 (1990). In order to decide whether the custodial parent and children shall be permitted to relocate at a geographical distance from a noncustodial parent, the trial court must consider the following factors:

(1) The court must assess the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children, and is not the result of a momentary whim on the part of the custodial parent. In considering the prospective advantages to the move, a court shall not limit itself solely to enhanced economic opportunities for the custodial parent, but must also assess other possible benefits of the relocation.

(2) The court must establish the integrity and the motives of both the custodial and noncustodial parent in either seeking the move or seeking to prevent it. The court must assure itself that the move is not motivated solely by a desire to frustrate the visitation rights of the noncustodial parent or to impede the development of a

healthy, loving relationship between the child and the noncustodial parent. An aspect of this determination is the degree to which the court can be confident that the custodial spouse will comply cooperatively with alternate visitation arrangements which the move may necessitate. Likewise, the court must consider the motives of the noncustodial parent in resisting relocation and decide whether the resistance is inspired by motives other than a legitimate desire to continue and deepen the parent-child relationship.

(3) The court must consider the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the parent and the noncustodial parent. We recognize that, in many cases, former weekly visitation may have to give way to an altered schedule which allows for less frequent but more extended contact between parent and child. However, the necessity of shifting visitation arrangements to account for geographical distances will not defeat a move which has been shown to offer real advantages to the custodial parent and child.

Applying these factors to the facts of this case, the court finds that the plaintiff has established significant, positive benefits to the relocation move, such as the increased size of the home, the increased size of the bedroom for the child, its proximity to the plaintiff's new in-laws and to her husband's employment, and the proximity to the Canfield area parks.

The court is satisfied that Mother has not tried to frustrate Father's ability to see the child, and to the contrary, Mother has allowed Father to pick the child up earlier

than provided in the existing court order. Mother has allowed Father to have alternate visitation days and first choice for summer vacation. Nothing seems to indicate that Mother is not agreeable to alternate or additional visitation of Father with the child. In addition, the entire visitation schedule of Father with the minor child has been designed around Father's fluctuating work schedule at his place of employment.

The court is of the opinion that the *Gruber, supra,* factors apply to this case, notwithstanding the argument by counsel for Mother that we are dealing with a rather small geographical distance, due to the fact that the move would take Mother and her daughter outside the jurisdiction of this court.

In addition, the court finds that the integrity of the custodial parent's motives in seeking to move, and of the noncustodial parent in seeking to prevent the move, are both made out of the desire to either further the welfare of the child, or on behalf of Father, to spend more time with the child.

The court is of the opinion that realistic, substitute visitation arrangements can be instituted in this case, in order to continue the appropriate, and ongoing relationship by and between Father and the minor child. A limiting factor in developing alternate visitation is not the distance of the new residence from Father's residence, an additional 3.3 miles and 25 minutes travel time, but Father's work schedule.

The court concludes that, after analysis of the *Gruber* factors, permitting Mother and new husband to move with the child from Hermitage, Pennsylvania to Canfield,.

Ohio is in the best interest of the minor child. As a result, the court will enter the attached order of court.

The court will give counsel for Mother an opportunity to present a proposed, realistic, substitute visitation arrangement to counsel for Father, and, if the court is not presented with an alternate custody arrangement within 30 days of the date of the accompanying order, the court will schedule a hearing in this regard.

## ORDER

And now, February 9, 2006, for the reasons set forth in the accompanying opinion, the court grants the petition of Mother, Carol Rae Cowan-Crawford, to modify the court order dated August 28, 2003, so as to allow Mother and the minor child to move from 2320 Avalon Drive, Hermitage, Pennsylvania, to 118 Skyline Drive, Canfield, Ohio.

The order of this court dated January 13, 2006, entered by Judge Michael J. Wherry, on the petition for special relief filed by Father, for the purpose of preventing the move and from preventing the child from being enrolled in the Canfield, Ohio school system, without prior written consent of Father or order of court, is hereby vacated.

The petition for civil contempt filed by Father, seeking to hold Mother in contempt, is discharged.

Counsel for Mother and counsel for Father shall consult with each other relative to a realistic, substitute visitation arrangement, and, upon failure to arrive at a mutually acceptable substitute visitation agreement

within 30 days of the date of this order, either party may file a motion with the court to schedule a conference and/or hearing for the purpose of establishing appropriate, substitute visitation arrangements by and between the minor child and Father.

The prothonotary shall properly serve notice of this opinion and order upon counsel of record and any party not represented by counsel.